IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROYAL QUINN, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PWG-21-2957 |
| GAIL WATTS, *Warden*, OFC. LOMAX, and SGT. DUPREE, | * * | |
| Defendants. | * | |

***

## MEMORANDUM OPINION

Self-represented Plaintiff Royal Quinn, who is presently incarcerated at Western Correctional Institution ("WCI") in Cumberland, Maryland, brings this civil action pursuant to 42 U.S.C. § 1983 against Baltimore County Detention Center ("BCDC") Director Gail Watts, Ofc. Lomax, and Sgt. Dupree. Compl., ECF No. 1. In the Complaint, Mr. Quinn alleges that Defendants failed to protect him while he was housed at BCDC, subjected him to the use of excessive force, and were deliberately indifferent to the conditions of his confinement. *Id.* He seeks monetary damages. *Id.* at 3.

On March 8, 2022, Defendants filed a Motion to Dismiss, or in the Alternative, for Summary Judgment. Mot., ECF No. 16. Subsequently, Mr. Quinn filed a Motion for Extension of Time to respond, ECF No. 21, but before the Court could rule on it, Mr. Quinn filed a response to Defendants' Motion, Resp., ECF No. 22.

A hearing is not necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the following reasons, Defendants' Motion, construed as a Motion for Summary Judgment, will be granted, and Mr. Quinn's Motion for Extension shall be denied as moot.

**BACKGROUND**

The claims raised in Mr. Quinn's Complaint arise from four incidents that took place while he was incarcerated at BCDC. *See* Compl. First, Mr. Quinn states that despite having been placed in protective custody on "walk alone, house alone" status, he was placed in a cell with two other inmates due to overcrowding. *Id.* at 4. On March 8, 2021, he was attacked and bitten by one of his cellmates, Terrence Hammock. *Id.*; *see* Mar. 8, 2021 Incident Report, ECF No. 1-1 at 6. After correctional staff responded to the cell, Mr. Quinn was escorted to the medical unit for treatment, and a supervisor directed BCDC staff to keep Mr. Quinn and Mr. Hammock separated. *Id.* Thereafter, the two inmates were kept in separate cells but on the same tier. Compl. 4. Mr. Quinn alleges that Mr. Hammock continued to harass him, and on June 26, 2021, Mr. Hammock threw feces in Mr. Quinn's cell, hitting Mr. Quinn's arm and chest. *Id.*

Next, Mr. Quinn alleges that on August 10, 2021, Ofc. Lomax "disregarded and abandoned her duties as a correctional officer" when she called Mr. Quinn a "child molester" and "rapist" over the dayroom intercom, in reference to the criminal charges against Mr. Quinn. *Id.* at 5. Mr. Quinn claims that, as a result, other inmates began to harass him, and he felt insecure about his safety. *See* Oct. 19, 2021 Intra-Department Memo, ECF No. 1-1 at 11-12. An exhibit attached to Mr. Quinn's Complaint indicates that the matter was investigated by BCDC staff, and his allegations were found to be unsubstantiated. *Id.*

Mr. Quinn's third claim arises from an incident that took place on August 31, 2021. Compl. 4. Mr. Quinn alleges that after he returned from court proceedings, he was not given dinner nor allowed his one-hour recreation time. *Id.* After complaining about the matter, Sgt. Dupree came to Mr. Quinn's cell and sprayed him with mace. *Id.* Mr. Quinn was then taken to the medical unit for treatment and subsequently given food. *Id.* An exhibit attached to Mr. Quinn's opposition

2

response to Defendants' motion indicates that the matter was investigated by correctional staff, who found as follows:

> On 08/31/2021 approximately 1957 hour Officers Scott and Tijani was conducting medication in 3GH housing unit. When Officers Scott and Tijani approached cell 17 inmate Quinn Royal . . . became very agitated towards staff due to him stating he didn't receive his dinner tray. Officer Rivera attempted to secure cell 17 when inmate Quinn prevented the cell door from securing by placing his body in the doorway. Officer Tijani attempted to push Inmate Quinn into his cell so the door can be secured. Officer Rivera announced a code 2 3G cell 17. Sergeant Dupree entered 3G housing unit and proceeded to cell 17 and gave Quinn multiple orders to lock in, but refused all orders and entered Sergeant Duprees personal space. Sergeant Dupree dispersed Oleoresin Capsicum Spray to the facial area of Inmate Quinn. Inmate Quinn was then taken to the ground and secured in handcuffs and escorted out of the section.

Aug. 31, 2021 Incident Report, ECF No. 22-1 at 1.

Mr. Quinn's fourth claim arises from BCDC's distribution of Amer-Fresh and Charmatex brand toothpastes, which Mr. Quinn alleges are not approved by either the U.S. Food and Drug Administration ("FDA") or the American Dental Association ("ADA"). Compl. 5. According to Mr. Quinn, the toothpastes contain "a dangerous substance known as silica," and he summarily states that using the toothpaste caused him pain which led to teeth extraction. *Id.*

On or about December 20, 2021, Mr. Quinn was transferred to Jessup Correctional Institution, and approximately one month later, to WCI. ECF Nos. 7, 8.

## STANDARD OF REVIEW

Complaints raised by pro se litigants are "liberally construed" and are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), plaintiffs must raise factual allegations that are "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

3

When the moving party styles its motion as a "Motion to Dismiss, or in the Alternative, for Summary Judgment," as is the case here, and attaches additional materials[1] to its motion, the nonmoving party is, of course, aware that materials outside the pleadings are before the Court, and the Court can treat the motion as one for summary judgment. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998) (treating defendant's motion as a motion for summary judgment when defendant captioned the motion "Motion to Dismiss, or, in the alternative, Motion for Summary Judgment," and submitted affidavits and other materials with the motion).

Summary judgment motions are granted when the moving party shows that there is no genuine issue of material fact, therefore entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The district court must view facts in the light most favorable to the nonmoving party, including drawing all "justifiable inferences" in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Material" facts "might affect the outcome of the suit under the governing law," and they constitute genuine issues if there is sufficient evidence for the trier of fact to rule in favor of the nonmoving party. *Id*. at 248.

## ANALYSIS

At the time of the incident giving rise to this case, Mr. Quinn was a pretrial detainee in Baltimore County, Maryland. Accordingly, his claims are analyzed under the Fourteenth

---

[1] Both Plaintiff and Defendants attach various exhibits to their filings without including any authenticating affidavits. Notwithstanding this omission (which, in other circumstances, could result in the court not considering them) is not fatal because the various incident reports and intra-department memoranda attached bear sufficient indicia of authenticity (Fed. R. Evid. 901(b)(4)), and the exhibits themselves are admissible as public records. Fed. R. Evid. 803(8)(a)(i) & (ii). Accordingly, I will consider them.

Amendment. *See Young v. City of Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001) (explaining that pretrial detainees are entitled to protection under the Fourteenth Amendment); *Hill v. Nicodemus*, 979 F.2d 987, 991-92 (4th Cir. 1992) (analyzing plaintiff's claim under the Due Process Clause of the Fourteenth Amendment where the plaintiff was a pretrial detainee and not a convicted prisoner at the time of the alleged incident). "The constitutional protections afforded a pre-trial detainee as provided by the Fourteenth Amendment are co-extensive with those provided by the Eighth Amendment." *Barnes v. Wilson*, 110 F.Supp.3d 624, 629 (D. Md. 2015) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). In turn, the Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. U.S. Const, amend. VIII; *Gregg v. Georgia,* 428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein,* 825 F.3d 206, 218 (4th Cir. 2016).

### I.    Failure to Protect

Mr. Quinn claims that Defendants failed to protect him when they continued to house him in the same tier as Terrence Hammock and when Ofc. Lomax called him a child molester and rapist over the dayroom intercom. As noted, the Eighth Amendment protects prison inmates from "cruel and unusual punishments." U.S. Const. amend. VIII. However, "not every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015). A failure to protect claim must satisfy a two-part inquiry, that includes both an objective and a subjective component, before liability is established. *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016); *Wallace v. Moyer,* No. CV CCB-17-3718, 2020 WL 1506343, at *6 (D. Md. Mar. 30, 2020). Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk of either injury. *Danser v.*

*Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014). Subjectively, the prisoner must establish that the prison officials exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987); *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Failure to take any reasonable action in an ongoing assault can amount to deliberate indifference. *See Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016). Where prison officials respond reasonably to a risk, however, they may be found free of liability. *Farmer*, 511 U.S. at 844; s*ee also Wallace*, 2020 WL 1506343, at *6 ("'Deliberate indifference' is a subjective standard; it requires that the official knew of the general risk and acted unreasonably in response to it." (quoting *Brown v. Harris*, 240 F.3d 383, 389 (4th Cir. 2001)).

With regard to the incident involving Mr. Hammock, Mr. Quinn faults Defendants for housing them in the same tier despite instructions that they be kept separate. Even if Mr. Quinn could satisfy the objective prong of the two-part inquiry based on the fact that Mr. Hammock threw feces at him, he cannot succeed on his failure to protect claims because he has not demonstrated deliberate indifference to a specific known risk of harm. Here, correctional staff responded to Mr. Quinn's cell when Mr. Hammock first attacked him in March 2021. At that time, the officers ensured Mr. Quinn's receipt of medical treatment, and a supervisor immediately ordered that Mr. Quinn and Mr. Hammock be housed in separate cells. There was no basis to suspect that Mr. Hammock would assault Mr. Quinn from a distance – the record indicates that Mr. Quinn's altercation with Mr. Hammock arose out of a dispute over the living conditions in their shared cell. *See* Mar. 8, 2021 Incident Report 6. Thus, based on their history, it could be expected that Mr. Hammock would attack Mr. Quinn if they continued to be housed in the same cell, but it was not unreasonable to believe that keeping Mr. Quinn and Mr. Hammock in separate cells, even if on the same tier, would eliminate the chance of assault by one inmate at the hands of the other.

Because there are no disputed evidentiary facts that establish Defendants' deliberate indifference to a specific risk of harm to Mr. Quinn, summary judgment in favor of Defendants is warranted. Fed. R. Civ. P. 56(e)(2) & (3).

Likewise, as to Mr. Quinn's claim that Ofc. Lomax failed to protect him by subjecting him to harassment by other inmates, he fails to show that subjectively, Ofc. Lomax exhibited deliberate indifference to a specific known risk of harm. As correctional staff informed Mr. Quinn, the matter was investigated by two officers who were not involved in the incident, and one of those officers spoke to Mr. Quinn. Oct. 19, 2021 Intra-Department Memo 11-12. Following their investigation, the officers concluded that Mr. Quinn's allegations were unsubstantiated. *Id.* Thus, there is no genuine dispute of material fact regarding whether Ofc. Lomax failed to protect Mr. Quinn from harm, so Defendants are entitled to summary judgment on this claim. Fed. R. Civ. P. 56(e)(2) & (3).

## II. Excessive Force

Next, Mr. Quinn claims that Sgt. Dupree used excessive force by spraying him with mace after Mr. Quinn requested dinner and recreation time. In evaluating this claim, the Court must inquire whether "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). The Due Process Clause of the Fourteenth Amendment requires a pretrial detainee to "show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472-73 (2015). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* at 2473. An excessive force claim does not require the subjective intent necessary for an Eighth Amendment claim. *Id*. at 2475. To satisfy the objective

level of harm, Mr. Quinn must show that Sgt. Dupree acted objectively unreasonably under the facts and circumstances of the case, which may be influenced by "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id*. at 2473; *see also Whitley v. Albers*, 475 U.S. 312, 321 (1986).

Here, the record reflects that Sgt. Dupree sprayed Mr. Quinn with mace after Mr. Quinn refused to comply with several correctional officers' repeated instructions to lock in. *See* Aug. 31, 2021 Incident Report 1. First, Mr. Quinn thwarted Officer Rivera's attempt to secure the cell by blocking the doorway. *Id*. Next, Mr. Quinn disregarded Officer Tijani's and Sgt. Dupree's instructions to lock in. *Id*. Thereafter, Mr. Quinn entered Sgt. Dupree's personal space, thus prompting Sgt. Dupree to disperse mace. *Id*. Mr. Quinn was then secured in handcuffs and escorted to the medical unit for treatment. *Id*.

The Fourth Circuit has previously "determined that the use of mace on an unruly prison inmate was not per se unconstitutional." *Justice v. Dennis*, 834 F.2d 380, 383 (4th Cir. 1987) (citing *Bailey v. Turner*, 736 F.2d 963, 970 (4th Cir. 1984)), *cert. granted, judgment vacated on other grounds*, 490 U.S. 1087 (1989). Where Sgt. Dupree's use of mace was not prolonged and was carried out only to gain control of Mr. Quinn after he failed to comply with repeated instructions, Mr. Quinn has not shown that Sgt. Dupree acted objectively unreasonably. *Cf. Justice*, 834 F.2d at 383 (concluding that jury could find that use of mace was reasonable where inmate was already handcuffed). Moreover, because the incident report confirms that Mr. Quinn was evaluated by medical staff after the incident, I conclude as a matter of law that any force used

by the Sgt. Dupree was applied in a good faith effort to maintain or restore discipline. Thus, he is entitled to summary judgment on Mr. Quinn's excessive force claim.

### III. Conditions of Confinement Claim

Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). To the extent Mr. Quinn complains about the brands of toothpaste used at BCDC, he raises a conditions of confinement claim.

As previously stated, "to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements—that the deprivation of [a] basic human need was *objectively* sufficiently serious, and that *subjectively* the officials acted with a sufficiently culpable state of mind." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (internal alterations omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993).

Here, Mr. Quinn has not produced evidence that his tooth pain and any subsequent extractions resulted from use of the BCDC-issued toothpastes. Moreover, Mr. Quinn has not shown that objectively, BCDC's failure to distribute a non-preferred brand of toothpaste deprived

9

him of a basic human need, or that subjectively, Defendants were aware that the toothpastes issued were not preferred by inmates, or the FDA and ADA. Thus, Defendants are entitled to summary judgment on this claim.[2]

## CONCLUSION

Defendants' Motion, construed as a Motion for Summary Judgment, is granted. Mr. Quinn's Motion for Extension of Time is denied as moot. A separate Order follows.

 December 12, 2022                                         /S/
 Date                                                      Paul W. Grimm
                                                           United States District Judge

---

[2] Defendants raise several other arguments in response to Mr. Quinn's claims. Defendants argue they are entitled to relief because Mr. Quinn did not exhaust his administrative remedies prior to filing suit in accordance with the Prison Litigation Reform Act. Mot. 5-6. Defendants also argue that Mr. Quinn's conditions of confinement claim is not justiciable because he is no longer housed at BCDC and therefore is no longer exposed to the alleged harmful conditions. *Id.* at 7-8. Additionally, Defendants assert that Defendant BCDC is not a proper defendant because as a county agency, it does not have an independent legal existence outside the county itself. *Id.* at 6. And finally, Defendants contend that Mr. Quinn has not made a sufficient showing that a constitutional violation occurred, so they are entitled to qualified immunity. *Id.* at 11-12. I need not consider these arguments because I find that Defendants are entitled to summary judgment on all of Mr. Quinn's claims.